Lodged
RECEIVED

SEP 21 2005

CLERK OF COURTS
U.S. DISTRICT COURT, N.D.O.
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **1:05CV2220** |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| and ) | |
| ) | |
| STATE OF OHIO, ) | JUDGE  **JUDGE WELLS** |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | **CONSENT DECREE** |
| UNITED STATES STEEL CORPORATION ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

I hereby certify that this instrument is a true and
correct copy of the original on file in my office.
Attest: Geri M. Smith, Clerk
U.S. District Court
Northern District of Ohio

By _____
Deputy Clerk

## CONSENT DECREE

### Table of Contents

Page

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. COMPLIANCE MEASURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII. CIVIL PENALTY FOR PAST VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VIII. EFFECT OF SETTLEMENT AND RESERVATIONS OF RIGHTS . . . . . . . . . . . . . . . 13

IX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XI. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XII. ACCESS TO INFORMATION AND DOCUMENT RETENTION . . . . . . . . . . . . . . . . . 26

XIII. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIV. PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XV. EFFECTIVE DATE AND RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . 31

XVI. CONSENT DECREE MODIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XVII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XVIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XIX. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## EXHIBITS

A.    Title V Permit Issued to Lorain Tubular Company, LLC on November 14, 2001 by Ohio EPA

B.    NPDES Permit No. 3ID00074·BD Issued to United States Steel Corporation Tubular Products Division on January 5, 2005 by Ohio EPA

C.    List of PCB Transformers at Lorain Pipe Mills, U.S. Tubular Products Division, United States Steel Corporation

# I. BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), has filed a Complaint (the "Complaint") in this matter seeking civil penalties and injunctive relief pursuant to the Clean Water Act, as amended ("CWA"), 33 U.S.C. § 1251 et seq., and the Clean Air Act, as amended ("CAA"), 42 U.S.C. § 7401 et seq., against Defendant United States Steel Corporation ("U.S. Steel") alleging violations by the former USS/KOBE Steel Company ("USS/KOBE") in connection with the integrated steel making facility located in Lorain, Ohio (the "Facility").

B.     Intervenor-Plaintiff, the State of Ohio ("Ohio"), on behalf of the Ohio Environmental Protection Agency ("Ohio EPA"), filed a motion to intervene in this civil action and a complaint against U.S. Steel alleging violations by USS/KOBE pursuant to the CAA and Chapter 3704 of the Ohio Revised Code (the "Complaint in Intervention").

C.     The Complaint filed by the United States ("the Complaint") alleges that USS/KOBE violated the CAA and certain regulations constituting part of Ohio's State Implementation Plan (the "Ohio SIP") under the CAA, codified at OAC 3745-17-08, by exceeding 0.030 grain of particulate emissions per dry standard cubic foot of exhaust gases from the No. 3 Seamless Rotary Mill or, in the alternative, violated OAC 3745-17-11, by exceeding the allowable emission rate for particulate emissions in OAC 3745-17-11 through emissions from the No. 3 Seamless Rotary Mill.

D.     The Complaint further alleges that USS/KOBE violated the CWA, and its National Pollutant Discharge Elimination System ("NPDES") Permit issued pursuant to the CWA, by failing to comply with certain numerical limitations governing effluent characteristics

2

for specified pollutants discharged by the Facility to the Black River, as established by USS/KOBE's NPDES Permit.

E.      Effective August 13, 1999, the two general partners constituting USS/KOBE were merged into Republic Technologies International, LLC, and certain assets at the Facility were transferred to Lorain Tubular Company, LLC ("Lorain Tubular").  Specifically, Lorain Tubular acquired assets and liabilities related to the Seamless Mills and the D-2 Landfill.  Lorain Tubular was a limited liability company formed as a joint venture by the holding companies of USX Corporation ("USX") and Kobe Steel.  On January 1, 2000, USX purchased the Kobe Steel interest in Lorain Tubular and Lorain Tubular became a wholly-owned subsidiary of USX.  On January 1, 2002, the assets of USX were divided between Marathon Oil Company and United States Steel Company and Lorain Tubular was merged into United States Steel LLC (which became United States Steel Corporation ("U.S. Steel")), as part of the Tubular Products Division. The Facility was renamed as Lorain Pipe Mills, U.S. Tubular Products Division, U.S. Steel.

F.      U.S. Steel does not admit the allegations made by the United States or Ohio in their complaints, and would present defenses to such allegations.

G.      It is the purpose of the Parties entering into this Consent Decree to assure compliance with the provisions of the CWA and CAA that Plaintiffs have alleged in their Complaints that USS/KOBE has violated.

H.      The Parties to this Consent Decree recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, consistent with applicable law, and in the public interest.

3

I.      By their respective undersigned representatives. Plaintiffs and Defendant, without any admission or adjudication of any issue of fact or conclusion of law. including but not limited to liability for any of the violations alleged in the Complaint and Complaint in Intervention have agreed to the entry of this Consent Decree.

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Section 113(b) of the CAA, 42 U.S.C. § 7413(b), 28 U.S.C. §§ 1331, 1345, and 1355. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). This Court also has personal jurisdiction over the Parties. Venue is proper in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1391(b). The Complaints assert claims upon which relief could be granted, if the allegations were proved.

2.      Solely for the purposes of this Consent Decree and the underlying Complaints. Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

3.      This Consent Decree applies to and is binding upon the United States and Ohio and upon Defendant, its respective successors and assigns. To the extent provided by Fed. R. Civ. P. 65(d), the injunctive provisions of the Consent Decree are binding upon Defendant's officers, agents, servants, and employees, but only to the extent that the alleged liability of such person is based on the person's status as an officer, agent, servant or employee of the Defendant or as a result of conduct within the scope of such person's employment or authority, and are

4

binding upon those Parties in active concert or participation with the Defendant, its officers, agents, servants or employees who receive actual notice of this Consent Decree with respect to all matters related to the performance of this Consent Decree.

4. No change in ownership of the Facility (or any portion thereof) shall in any way alter Defendant's obligations or rights under this Consent Decree. Similarly, no change in corporate status or ownership of Defendant shall in any way alter Defendant's obligations or rights under this Consent Decree. Effective from the date of lodging of this Consent Decree, at least thirty (30) days prior to selling or transferring ownership or operation of the Facility (or any part thereof) to any other person, Defendant shall provide a copy of this Consent Decree to such prospective successor owner or operator, and shall simultaneously verify to the United States in writing, in the manner set forth in Section XIII (Notices and Submissions), that a copy of the Consent Decree has been provided to such prospective successor owner or operator.

## IV. DEFINITIONS

5. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the CWA or CAA, or in regulations promulgated thereunder, shall have the meanings assigned to them in such definitions. In addition, the following definitions shall apply to the terms used in this Consent Decree:

"CAA" means the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq.

"Calendar Quarter" shall mean each of the three-month periods ending on March 31, June 30, September 30, and December 31.

"Complaints" shall mean, collectively, the Complaint filed by the United States and the Complaint in Intervention filed by Ohio.

"Consent Decree" shall mean this Consent Decree, including all appendices hereto.

5

"Court" or "District Court" means the United States District Court for the Northern District of Ohio.

"CWA" means the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 et seq., also known as the Clean Water Act.

"Day" means a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Defendant" or "U.S. Steel" means United States Steel Corporation.

"Facility" means the steel plant located at 2199 East 28th Street in Lorain, Ohio.

"Interest" means interest at the rate specified for a money judgment in a civil case recovered in a district court pursuant to 28 U.S.C. § 1961.

"NPDES Permit" means, as applicable, the USS/KOBE National Pollutant Discharge Elimination System Permit No. 3ID00028*ID for the Facility issued pursuant to the CWA on September 30, 1994, and the NPDES Permit No. 3ID00074*BD issued on January 5, 2005 to United States Steel Corporation Tubular Products Division by Ohio EPA, as well as any permit amendment or renewal or new permit issued for any portion of the Facility under the CWA.

"Ohio" shall mean the State of Ohio.

"Ohio EPA" means the Ohio Environmental Protection Agency and any successor departments or agencies of the State of Ohio.

"Ohio SIP" means the Ohio State Implementation Plan approved by U.S. EPA pursuant to Section 110(a) of the CAA, 42 U.S.C. § 7410(a).

"Paragraph" means a portion of this Consent Decree identified by an arabic numeral or an

6

upper case letter.

"Parties" means the United States, Ohio and the Defendant.

"Plaintiffs" means the United States and Ohio.

"Section" means a portion of this Consent Decree identified by a roman numeral.

"SEP" or "Transformer Removal Project SEP" means the supplemental environmental project set forth in Paragraph 9.

"Title V Permit" means the Final Title V Permit issued by Ohio EPA to Lorain Tubular Company, LLC on November 14, 2001, as well as any permit amendment or renewal or new permit issued for any portion of the Facility under the CAA.

"U.S. EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"United States" shall mean the United States of America.

## V. COMPLIANCE MEASURES

6.    CAA Compliance Measures.

a.    Compliance with Title V Permit at No. 3 Seamless Rotary Mill.  U.S. Steel shall: capture all particulate emissions from the No. 3 Seamless Rotary Mill (Emissions Unit ID P048) and duct such emissions to the scrubber system serving the No. 3 Seamless Rotary Mill; and assure that the outlet emission rate from the No. 3 Seamless Rotary Mill scrubber system does not exceed the emission limitation provided in its Title V Permit, attached hereto as Exhibit A. U.S. Steel shall operate and maintain the No. 3 Seamless Rotary Mill, including the scrubber system and other air pollution control equipment serving the No. 3 Seamless Rotary Mill, in such a manner as to assure continuous compliance with the applicable provisions of the Ohio SIP and applicable permits issued pursuant to the foregoing.

7

b.    Stack Test at No. 3 Seamless Rotary Mill Scrubber System.  Within sixty

(60) days of entry of this Consent Decree, U.S. Steel shall conduct a test to determine the

emissions of particulate matter from the No. 3 Seamless Rotary Mill scrubber system in

accordance with 40 C.F.R. Part 60, Appendix A, Method 5.  Not later than thirty (30) days prior

to the proposed test date, U.S. Steel shall submit an "Intent to Test" notification to Ohio EPA and

U.S. EPA.  The "Intent to Test" notification shall be submitted to the individuals listed in

Section XIII (Notices and Submissions).  The notification shall describe in detail the proposed

test methods and procedures, the source operating parameters, the time and date of the test, and

the person conducting the test.  Testing cannot proceed until, and unless, U.S. Steel has received

U.S. EPA's prior written acceptance of the testing procedures and other parameters in the "Intent

to Test" notification.  U.S. Steel shall  provide U.S. EPA and Ohio EPA with an opportunity to

observe such test.  Within thirty (30) days after the completion of the emissions test, U.S. Steel

shall submit a complete emission test report detailing the result of the test to Ohio and U.S. EPA

as provided by Section XIII (Notices and Submissions).

7.    CWA Compliance Measures.

a.    Compliance with Effluent Limitations of NPDES Permit.  U.S. Steel

hereby certifies that, as of the date of entry of this Consent Decree, it has implemented corrective

measures as necessary to ensure its consistent compliance with all discharge limitations for the

Facility specified for Outfall No. 001 (final treated effluent from D-2 Landfill) of NPDES Permit

No. 3ID00074*BD, attached hereto as Exhibit B (formerly known as Outfall No. 006 in NPDES

Permit No. 3ID00028*ID), subject to all defenses authorized under the permit or pursuant to

relevant portions of the CWA, 33 U.S.C. § 1251, et seq., and accompanying regulations.  U.S.

Steel shall implement additional corrective measures as necessary to ensure its continued

8

compliance with all discharge limitations specified in the NPDES Permits or in any applicable

effluent limitations promulgated by U.S. EPA under Section 301 of the CWA for Outfall No. 001

of NPDES Permit No. 3ID00074*BD.

        b.      <u>Reporting Related to CWA Compliance Meaasures</u>. Beginning on the

date of entry of this Consent Decree and continuing until termination of the Consent Decree, U.S.

Steel shall submit to U.S. EPA as provided by Section XIII (Notices and Submissions) all reports

required by NPDES Permit No. 3ID00074*BD, or any amendment or renewal thereof including,

but not limited to, monthly operating reports and reports of bypass events at the time such reports

are due to Ohio EPA pursuant to the NPDES Permit.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT

    8.      <u>General Provisions</u>

        a.      U.S. Steel shall complete the supplemental environmental project ("SEP")

described below in Paragraph 9. The United States and Defendant agree that this SEP is intended

to secure significant environmental or public health protection and improvements.

        b.      By signing this Consent Decree, Defendant certifies that it is not otherwise

required, and has no liability under any federal, state, or local law or regulation, or pursuant to

any agreements or orders of any court, to perform the SEP described in this Section of the

Consent Decree. Defendant further certifies that it has not otherwise received, and will not in the

future receive, credit for such SEP or other penalty offset in any other enforcement action.

        c.      <u>SEP Reports</u>.

        (1)     <u>SEP Completion Report</u>. Within sixty (60) days after completing

all requirements of the SEP described in this Section, U.S. Steel shall submit a SEP Completion

Report to the United States in the manner prescribed by Section XIII (Notices and Submissions).

9

The SEP Completion Report shall contain the following information:

(i)        A detailed description of the SEP as implemented;

(ii)       A description of any operating problems encountered and the solutions
           thereto;

(iii)      Itemized costs, documented by evidence of such costs, such as invoices,
           purchase orders, or other documentation that specifically identifies and
           itemizes the individual costs of the good or services for which payment is
           made;

(iv)       Estimated future operation and maintenance costs, and the basis therefor;

(v)        Certification that the SEP has been fully implemented pursuant to the
           provisions of this Consent Decree; and

(vi)       A description of the environmental and public health benefits resulting
           from implementation of the SEP (with a quantification of the benefits and
           pollutant reductions, if feasible).

           (2)      Progress Reports. Beginning on the date of entry of this Consent
Decree and continuing thereafter until the SEP is completed, U.S. Steel shall submit quarterly
progress reports in the manner prescribed by Section XIII (Notices and Submissions). These
reports shall describe the work performed and any problems encountered during the preceding
period, work to be performed during the next reporting period, anticipated problems, and planned
resolutions of past or anticipated problems. Defendant shall provide progress reports within
thirty (30) days following the end of each Calendar Quarter.

           d.       Defendant shall retain copies of all purchase orders, receipts, canceled
checks, and other documentation of the costs of the SEP as prescribed by Section XII (Access to

10

Information and Document Retention) and shall provide such documentation to the United States as part of the SEP Completion Report.

   e.  Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP undertaken pursuant to this Consent Decree shall include the following language, "This project was undertaken in connection with the settlement of an enforcement action taken by United States and Ohio."

   f.  Defendant hereby agrees that any funds expended in the performance of the SEP undertaken pursuant to this Consent Decree shall not be deductible as a business expense for purposes of Federal taxes. In addition, Defendant hereby agrees that, within thirty (30) days of the date it submits its Federal tax reports for the calendar year in which the SEP described in Paragraph 9 below is completed, it will submit to U.S. EPA as prescribed in Section XIII (Notices and Submissions) the following certification that any funds expended in the performance of the SEP have not been deducted from Federal taxes:

> "Under penalties of perjury, I declare that I have examined the tax returns pertaining to the years 2004 through 2007. To the best of my knowledge and belief, these tax returns do not contain deductions or depreciation for any supplemental project expenses my company has incurred."

   9.  <u>Polychlorinated Biphenyl (PCB) Transformer Removal Project</u>. Within twenty-four (24) months of entry of this Consent Decree. U.S. Steel shall remove up to thirteen (13) PCB transformers currently located at the Facility and dispose of them in accordance with the PCB regulations at 40 C.F.R. Part 761; provided, however, that U.S. Steel shall not be required to spend more than $294,500 for such activities pursuant to this Consent Decree. For purposes of this SEP, "PCB transformers" shall refer to those electrical transformers containing at least 500 parts per million ("ppm") PCBs. A list of the thirteen (13) PCB transformers currently located

at the Facility, together with installation year, is contained in Exhibit C. Costs incurred on or after June 11, 2004, to perform the SEP, will count toward the $294,500 that U.S. Steel shall spend on this SEP.

## VII. CIVIL PENALTY FOR PAST VIOLATIONS

10.     Within thirty (30) days of the entry of this Consent Decree, Defendant shall pay to the United States a civil penalty in the amount of $50,012.50. Interest shall begin to accrue on the day after payment is due. Defendant shall make its payment by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice account in accordance with current EFT procedures, referencing the above-captioned case name and the assigned civil action number, as well as DOJ Case No. 90-5-2-1-06709. Defendant shall make payment in accordance with instructions to be provided to Defendant by the Financial Litigation Unit of the Office of the United States Attorney for the Northern District of Ohio after the lodging of this Consent Decree, and shall advise the Financial Litigation Unit at the time payment is being made. Any payment received by the Department of Justice after 3:00 p.m. Eastern Time shall be credited on the next business day.

11.     Within thirty (30) days of the entry of this Consent Decree, Defendant shall pay to Ohio a civil penalty pursuant to Ohio Revised Code 3704.06 in the amount of $50,012.50. Interest shall begin to accrue on the day after payment is due. This amount shall be paid by delivering a certified check in that amount to Amy Laws (or her successor), Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215-3400, payable to the Order of "Treasurer, State of Ohio."

12.     Defendant shall send notice to U.S. EPA, Department of Justice, Ohio EPA and the Ohio Attorney General that payment has been made in accordance with Section XIII (Notices

12

and Submissions).

13.    Civil penalties paid pursuant to this Consent Decree shall not be deductible for purposes of Federal or state taxes.

## VIII.  EFFECT OF SETTLEMENT AND RESERVATIONS OF RIGHTS

14.    Complete performance by Defendant of all of its obligations under this Consent Decree shall fully resolve all civil liability of U.S. Steel to the United States for the violations alleged in the Complaint in this action, and to Ohio for the violations alleged in the Complaint in Intervention filed by Ohio in this matter, through the date of lodging of the Consent Decree, and all liability to the United States related to any discharges of pollutants or other NPDES Permit violations that have occurred or are alleged to have occurred with respect to Outfall No. 006 in NPDES Permit No. 3ID00028*ID or as subsequently redesignated, Outfall No. 001 in NPDES Permit No. 3ID00074*BD, located at the carbon treatment system for the D-2 Landfill, through the date of lodging of the Consent Decree. Nothing in the Consent Decree is intended, or shall be construed, to operate in any way to resolve any other civil liability, or any criminal liability, of Defendant.

15.    The United States and Ohio reserve all rights and remedies, legal and equitable, available to enforce the provisions of this Consent Decree.

16.    Nothing herein shall be construed to limit the power of the United States or Ohio to institute any action against Defendant or any other person in response to conditions that may present an imminent and substantial endangerment to the public health, welfare, or the environment.

17.    This Consent Decree does not limit or affect the rights of the Parties against any third parties.

13

18.     Each Party to this action shall bear its own costs and attorney's fees.

19.     This Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law, and in no way relieves Defendant of its responsibilities to comply with all applicable federal, state, and local laws and regulations.

## IX.  STIPULATED PENALTIES

### A.     Penalties Payable to the United States and Ohio

20.     For any failure to comply with the requirements of this Consent Decree specified below, stipulated penalties shall be paid jointly to the United States and Ohio, to be divided evenly, in accordance with the provisions set forth below in this Paragraph:

   a.     For each day on which U.S. Steel fails to comply with the emission limit for the No. 3 Seamless Rotary Mill (Emission Unit ID P048) in the final Title V permit, U.S. Steel shall pay a stipulated penalty of $1,000 per day for the first thirty (30) days, $3,000 per day for the 31st through 60th day, and $5,000 per day after the 60th day.

   b.     For each day on which U.S. Steel fails to conduct the testing to determine emissions of particulate matter from the No. 3 Seamless Rotary Mill Scrubber System as specified in Subparagraph 6.b above, U.S. Steel shall pay a stipulated penalty of $500 per day for the first thirty (30) days, $1,000 per day for the 31st through 60th day, and $2,000 per day after the 60th day.

### B.     Penalties Payable to the United States Only

21.     For any failure to comply with the requirements of this Consent Decree specified below, stipulated penalties shall be paid to the United States in accordance with the provisions set forth below in this Paragraph:

   a.     For any failure to submit the SEP Completion Report as required by

14

Paragraph 8.c(1) above, U.S. Steel shall pay a stipulated penalty in the amount of $500 per day for the first thirty (30) days, $1,000 per day for the 31st through 60th day, and $2,000 per day after the 60th day, until the required report is submitted.

   b. For any failure to submit any SEP progress report as required by Paragraph 8.c(2) above, U.S. Steel shall pay a stipulated penalty in the amount of $500 per day for the first thirty (30) days, and $1,000 per day thereafter, until the required report is submitted; provided, however, that the total stipulated penalties for a failure to submit such progress report shall run only until the date that the next progress report is submitted, provided that the progress report includes the information that should have been submitted in the progress report that U.S. Steel failed to submit.

   c. For each day on which U.S. Steel fails to comply with a discharge limitation specified by NPDES Permit No.3ID00074*BD, or any amendment or renewal thereof, for Outfall No. 001 (formerly known as Outfall No. 006 in NPDES Permit No. 3ID00028*ID) located at the carbon treatment system for the D-2 Landfill, stipulated penalties shall be paid as follows:

     (1) For a violation of a daily limit:

       (a) $1,500 for the first through third exceedances of a specified effluent characteristic; and

       (b) $3,000 for any additional exceedances of the same effluent characteristic.

     (2) For a violation of a monthly limit:

       (a) $3,000 for the first through third exceedances of an effluent characteristic; and

15

(b)     $5,000 for any additional exceedances of the same effluent characteristic.

(3)     For the purpose of calculating stipulated penalties pursuant to this Subparagraph 21.c, an exceedance of a monthly limit shall constitute one exceedance, not thirty exceedances. However, stipulated penalties shall be assessed under both Subparagraphs 21.c(1) and 21.c(2) where the Defendant exceeds both a daily limit and a monthly average limit for a particular parameter during a given month.

d.     For each bypass in violation of NPDES Permit No. 3ID00074*BD, or any amendment or renewal thereof, through Outfall 001 (formerly known as Outfall 006 in NPDES Permit No. 3ID00028*ID) located at the carbon treatment system for the D-2 landfill, stipulated penalties shall be paid as follows:

(1)     $1,500 for the first through third violations during the term of the Consent Decree; and

(2)     $3,000 for any additional violations during the term of the Consent Decree.

e.     For each day on which U.S. Steel fails to make complete and timely submission of any of the following items, U.S. Steel shall pay stipulated penalties of $500 per day for the first thirty (30) days, $750 per day for the 31st through 60th day, and $1,000 per day after the 60th day, until the required submission is made:

(1)     "Intent to Test" notification for the stack test at the No. 3 Seamless Rotary Mill Scrubber System as required by Subparagraph 6.b.

(2)     Test report for the stack test at the No. 3 Seamless Rotary Mill Scrubber System as required by Subparagraph 6.b.

16

f.    For each failure to submit any report required by the NPDES Permit 3ID00074*BD, or any amendment or renewal thereof, to the United States as required by Subparagraph 7.b, U.S. Steel shall pay stipulated penalties of $500 per day for the first thirty (30) days, $1,000 per day for the 31st through 60th day, and $2,000 per day after the 60th day; provided, however, that the total stipulated penalties for a failure to submit a periodic report shall run only until the date that the next periodic report is submitted provided that the next periodic report includes the information that should have been submitted in the periodic report that U.S Steel failed to submit.

g.    Except as otherwise set forth in this Subparagraph, for failure to complete the PCB Transformer Removal Project SEP as set forth in Paragraph 9, U.S. Steel shall pay the following stipulated penalties:

(1)    If U.S. Steel removes and disposes of all of the PCB transformers at the Facility, as set forth in Paragraph 9, but in doing so, expends less than $265,050 (90% of $294,500) in completing the PCB Transformer Removal Project SEP set forth in Paragraph 9, U.S. Steel shall pay a stipulated penalty amounting to $294,500 minus the amount of money U.S. Steel spent on the PCB Transformer Removal Project SEP.

(2)    Without limiting anything set forth in Section X (Force Majeure), if U.S. Steel fails to complete the PCB Transformer Removal Project SEP on or before the deadline set forth in Paragraph 9 for any reason, U.S. Steel shall pay a stipulated penalty of $500 per day for the first thirty (30) days, $1,000 per day for the 31st through 60th day, and $2,000 per day after the 60th day, until the PCB Transformer Removal Project SEP is completed.

(3)    Without limiting anything set forth in Section X (Force Majeure), if U.S. Steel fails to complete the PCB Transformer Removal Project SEP set forth in Paragraph 9

17

for any reason, U.S. Steel shall pay a stipulated penalty amounting to $294,500 minus the amount of money U.S. Steel spent on the PCB Transformer Removal Project SEP up to the point that work on the project ceased.

    (4)  If U.S. Steel removes and disposes of all of the PCB transformers at the Facility, as set forth in Paragraph 9, and in doing so, expends at least $265,050 (90% of $294,500) in completing the SEP, U.S. Steel shall pay no stipulated penalty.

**C.**  **Penalties Payable to Ohio Only**

  22.  For any failure to comply with the requirements of this Consent Decree specified below, stipulated penalties shall be paid to Ohio in accordance with the provisions set forth below in this Paragraph.

    a.  For each day on which U.S. Steel fails to make complete and timely submission of any of the following items, U.S. Steel shall pay stipulated penalties of $500 per day for the first thirty (30) days, $750 per day for the 31st through 60th day, and $1,000 per day after the 60th day, until the required submission is made:

      (1)  "Intent to Test" notification for the stack test at the No. 3 Seamless Rotary Mill Scrubber System as required by Subparagraph 6.b.

      (2)  Test report for the stack test at the No. 3 Seamless Rotary Mill Scrubber System as required by Subparagraph 6.b.

**D.**  **Payment of Stipulated Penalties**

  23.  All payments of stipulated penalties to the United States under this Section shall be made by certified or cashier's check(s) made payable to the "Treasurer, United States of America"; tendered to the Financial Litigation Unit of the Office of the United States Attorney for the Northern District of Ohio; accompanied by a letter indicating that the payment is for

18

stipulated penalties under this Consent Decree; and referencing the case name and civil action number, DOJ Case No. 90-5-2-1- 06709, and Defendant's name and address. Copies of the transmittal letter and check(s) shall be sent to the United States in the manner provided by Section XIII (Notices and Submissions). All stipulated penalties shall be due and payable to the United States within thirty (30) days of U.S. Steel's receipt of a written demand for payment from the United States as provided by Paragraph 26, except as otherwise provided by Paragraph 25 in the event Defendant invokes the dispute resolution procedures under Section XI (Dispute Resolution).

24.     All payments of stipulated penalties to Ohio under this Section shall be made payable to "Treasurer, State of Ohio," and delivered to Amy Laws (or her successor), Office of the Attorney General, State Office Tower, 30 E. Broad Street, Columbus, Ohio 43215-3400, or her successor. Defendant shall transmit evidence of any payment made pursuant to this Section to the Parties as prescribed in Section XIII (Notices and Submissions). All stipulated penalties shall be due and payable to Ohio within thirty (30) days of the date that Ohio makes a written demand for payment thereof as set forth in Paragraph 26, except as otherwise provided by Paragraph 25 in the event Defendant invokes the dispute resolution procedures under Section XI (Dispute Resolution).

25.     Stipulated penalties payable following any period during which dispute resolution provisions of this Consent Decree are invoked shall be paid as follows:

a.     If the dispute is resolved by informal agreement or by a decision by U.S. EPA, Ohio EPA, or both, that is not appealed to this Court, accrued penalties determined to be owing, together with accrued interest, shall be paid within thirty (30) days of U.S. Steel's receipt of a written demand for payment from U.S. EPA respectively, Ohio EPA respectively. or both, following the informal resolution or receipt of U.S. EPA's, Ohio EPA's, or a joint decision, whichever is applicable;

19

b.     If the dispute is appealed to this Court and the United States or Ohio or both prevail(s) in whole or in part, U.S. Steel shall pay all accrued penalties that the Court determines are owed to the United States respectively, Ohio respectively, or both, within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph 25.c below; and

c.     If the Court's decision is appealed by any Party, U.S. Steel shall pay all accrued penalties that this Court determines are owed to the United States or Ohio or both, into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order. All costs and expenses associated with such escrow account shall be borne by U.S. Steel. Within fifteen (15) days following receipt of a final appellate court decision regarding the dispute, the escrow agent shall pay the balance of the account to the United States or Ohio or both, or to U.S. Steel to the extent each prevails. If this Court determines that U.S. Steel owes stipulated penalties to the United States or Ohio or both, U.S. Steel shall remit any stipulated penalties that continue to accrue pending appeal to the escrow account every thirty (30) days.

E.     **General**

26.     All stipulated penalties shall begin to accrue on the day after complete performance is due or the day noncompliance occurs, and shall continue to accrue through the day complete performance occurs or the date complete correction of noncompliance occurs. Stipulated penalties shall accrue regardless of whether U.S. EPA or Ohio or both, as applicable, has made a demand for payment, but shall not be payable until U.S. EPA or Ohio or both, as applicable, makes a written demand for payment, which shall generally describe the noncompliance for which stipulated penalties are demanded. No stipulated penalties shall accrue or become payable prior to entry of this Consent Decree.

20

27.     If Defendant fails to pay stipulated penalties when due, the United States or Ohio or both, as applicable. may institute proceedings to collect the penalties. as well as Interest. Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date such stipulated penalties are due.

28.     Nothing herein shall preclude the simultaneous accrual of penalties for separate violations of this Consent Decree.

29.     The payment of penalties shall not alter in any way Defendant's obligation to complete the performance of any tasks required under this Consent Decree.

30.     Nothing herein shall preclude the United States or Ohio or both from seeking additional legal or equitable relief for violation of this Consent Decree or the CWA or CAA including but not limited to injunctive relief, and civil and criminal sanctions, and U.S. Steel retains all rights to contest such actions.  Any stipulated penalties paid by U.S. Steel shall be offset against any penalties for the same violation that the United States or Ohio may be entitled to collect as a result of other enforcement actions, unless the previously paid penalties were expressly taken into account in determining the amount of further penalty to be paid by U.S. Steel.

31.     Notwithstanding any other provision of this Section, the United States or Ohio or both may, in its/their unreviewable discretion, waive any portion of a stipulated penalty owing to them that has accrued pursuant to this Consent Decree.  Such waiver shall be effective only if made in writing by counsel for Plaintiffs.

## X. FORCE MAJEURE

### A.     United States

32.     A "force majeure event," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant (including its contractors, consultants,

21

agents, and employees) that delays or prevents the performance of any obligation under this

Consent Decree, despite Defendant's best efforts to fulfill the obligation. The requirement that

Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

any potential force majeure event and best efforts to address the effects of any potential force

majeure event (i) as it is occurring and (ii) following the potential force majeure event, such that

the delay is minimized to the greatest extent possible. Increased costs of complying with this

Consent Decree or changed economic circumstances shall not constitute a force majeure event

under this Consent Decree.

33. If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, the

Defendant shall notify the individuals specified in Section XIII (Notices and Submissions) no later

than five (5) working days after Defendant knew or, by exercise of due diligence, should have

known that the event is reasonably likely to cause a delay. Within ten (10) working days

thereafter, Defendant shall provide U.S. EPA a written explanation and description of: (i) the

reasons for the delay, (ii) the anticipated duration of the delay, (iii) all actions taken or to be taken

to prevent or minimize the delay, (iv) a schedule for implementation of any measures to be taken

to prevent or mitigate the delay or the effect of the delay, and (v) Defendant's rationale for

attributing such delay to a force majeure event, if Defendant intends to assert such a claim.

Defendant shall include with any notice all available documentation supporting its claim that the

delay was attributable to a force majeure event. Failure to comply with the above-described

requirements shall constitute a waiver of Defendant's ability to assert that the relevant event is a

force majeure event.

34. Notification of any delay, in and of itself, shall not extend the time allowed for

22

satisfying any requirement under this Consent Decree.

35.     If U.S. EPA determines that circumstances which cause or may cause delay is a force majeure event, U.S. EPA will issue Defendant a written extension of the time for performance of the obligations under this Consent Decree that are affected by the force majeure event, affording Defendant such time as is necessary to complete those obligations, taking into account the duration of the delay or anticipated delay due to the force majeure event.

36.     If U.S. EPA and Defendant cannot agree that a delay or failure has been caused by a force majeure event, or cannot agree on the length of an extension to account for a force majeure event, the dispute shall be resolved in accordance with Section XI (Dispute Resolution) of this Consent Decree. In any such dispute resolution proceeding, Defendant shall bear the burden of demonstrating that the delay has been caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 32 and 33.

**B.     Ohio**

37.     If any event occurs which causes or may cause Defendant to violate any provision of this Consent Decree, Defendant shall notify Ohio EPA in writing within twenty-one (21) days from the occurrence of the event, describing in detail the precise cause of the delay or violation, the anticipated length of the delay, if applicable, the measures taken by Defendant to prevent or minimize the delay and the timetable by which those measures will be implemented. Defendant shall make every effort to avoid or minimize any such violation or delay.

38.     In any action by Ohio to enforce any of the provisions of this Consent Decree, Defendant may raise at that time the question of whether it is entitled to a defense that its conduct

23

was caused by circumstances beyond its control such as, by way of example and not limitation, acts of God, strikes, acts of war or civil disturbances. While Ohio does not agree that such a defense exists, it is, however, hereby agreed by Defendant and Ohio that it is premature at this time to raise and adjudicate the existence of such a defense and that the appropriate point at which to adjudicate the existence of such a defense is at the time, if ever, that the proceeding to enforce this Consent Decree is commenced by Ohio. At that time, the burden of proving that any delay was or will be caused by circumstances beyond the control of Defendant shall rest with Defendant. Failure by the Defendant to timely comply with the notice requirements of Paragraph 37 with respect to any event shall, at the option of Ohio, constitute a waiver by Defendant of any right it may have to raise such a defense with respect to that event. Changed financial circumstances or increased costs associated with the implementation of any action required by this Consent Decree shall not in any event constitute circumstances beyond the control of either Defendant or serve as a basis for an extension of time under this Consent Decree.

## XI. DISPUTE RESOLUTION

39.     Any dispute that arises between either Defendant and the United States or Ohio with respect to the meaning or application of any of the requirements of this Consent Decree shall be, in the first instance, the subject of informal negotiations between those Parties to attempt to resolve such disputes. Such period of informal negotiations shall not extend beyond thirty (30) days of the date when notice of a dispute is given by one Party to the other, unless the Parties to the dispute have agreed in writing to extend that period. After informal negotiations, if the Parties to the dispute are unable to agree upon the meaning or application of the requirements of this Consent Decree, then the Defendant shall comply with the position taken by the Plaintiffs, subject only to the Defendant's right to petition the Court as set forth in Paragraph 40, below.

40.     Within thirty (30) days following the end of the informal negotiations period for resolution of the dispute set forth in Paragraph 39, above, the Defendant may petition the Court for relief. Such petition shall set forth the nature of the dispute and proposal for its resolution. The United States and Ohio shall have thirty (30) days to respond to the petition and propose an alternate resolution. In any such dispute, the Defendant shall bear the burden of demonstrating that its actions or positions taken are in accordance with and will assure the Defendant's compliance with, the terms, conditions, requirements and objectives of this Consent Decree and applicable requirements of the CAA or CWA. The legal standard applicable to any such dispute shall be the standard provided by applicable law. If the Defendant fails to petition the Court for relief within thirty (30) days following the end of the informal negotiations period set forth in Paragraph 39, then the position advanced by the Plaintiffs shall be considered binding.

41.     The filing of a petition asking the Court to resolve a dispute shall not in and of itself extend or postpone any obligation of Defendant under this Consent Decree, provided that payment of any stipulated penalties with respect to the disputed matter shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of any failure or refusal to comply with any term or condition of this Consent Decree, except that stipulated penalties shall not accrue with respect to judicial review by this Court of any dispute under this Paragraph during the period, if any: (a) beginning on the 31st day after the Court's receipt of the petition until the date that the Court issues a final decision regarding such dispute, provided that the Court has not made a finding that Defendant has filed such petition in bad faith for purposes of causing delay in the payment of stipulated penalties; or (b) of any appeal by the United States or Ohio to any federal Court of Appeals regarding any decision made by the Court under the judicial review provisions set forth herein. In the event that

25

Defendant does not prevail on the disputed issue, stipulated penalties, if applicable, shall be assessed and paid as provided in Section IX (Stipulated Penalties). To the extent that U.S. Steel prevails on the disputed issue, stipulated penalties shall be excused.

42. Nothing herein regarding dispute resolution, shall preclude the United States or Ohio or both from seeking additional legal or equitable relief for violation of this Consent Decree or the CWA or CAA, including but not limited to injunctive relief, and civil and criminal sanctions, or bringing an action for contempt.

## XII. ACCESS TO INFORMATION AND DOCUMENT RETENTION

43. Commencing on the date of entry of this Consent Decree and continuing until termination of this Consent Decree, Defendant agrees to provide the United States and its representatives, including U.S. EPA, its contractors and Ohio and its representatives, including Ohio EPA and its contractors, upon presentation of credentials, access at all reasonable times, and in accordance with the Defendant's ordinary procedures for safety, to the portions of the Facility that it owns, and to allow such representatives to move about, without restriction, for the purposes of conducting any activity related to this Consent Decree, including but not limited to monitoring implementation, verifying any data or information submitted to the United States or Ohio under this Consent Decree, and assessing Defendant's compliance with this Consent Decree. This right of access is in addition to, and shall not limit, any access rights afforded by any law or regulation. The right of access granted under this Paragraph shall terminate in the event that the United States withdraws or withholds its consent to this Consent Decree pursuant to Section XIV (Public Comment) or the Court declines to enter the Consent Decree.

44. Defendant shall provide to U.S. EPA and Ohio EPA, upon request, copies of all documents and information within its possession or control (or that of its contractors or agents)

26

relating to compliance with this Consent Decree. Defendant shall also make available to U.S.
EPA and Ohio EPA, upon request, their employees, agents, or representatives with knowledge of
relevant facts concerning its compliance with this Consent Decree.

        a.      Defendant may assert business confidentiality claims covering part or all of
the documents or information submitted to the U.S. EPA under this Consent Decree, to the extent
permitted by and in accordance with 40 C.F.R. Part 2. Documents or information determined to
be confidential by U.S. EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart
B. If no claim of confidentiality accompanies documents or information when they are submitted
to U.S. EPA, the public may be given access to such documents or information without further
notice in accordance with 40 C.F.R. Part 2, Subpart B.

        b.      Defendant may assert business confidentiality claims covering part or all of
the documents or information submitted to the Ohio EPA under this Consent Decree, to the extent
permitted by and in accordance with Ohio law. Documents or information determined to be
confidential by the Ohio EPA will be afforded the protection specified in Ohio law. If no claim of
confidentiality accompanies documents or information when they are submitted to the Ohio EPA,
the public may be given access to such documents or information without further notice.

        c.      Defendant may assert that certain documents and information are privileged
under the attorney-client privilege or any other privilege recognized by federal or Ohio law. If
Defendant asserts such a privilege in lieu of providing documents, Defendant shall provide the
Plaintiffs with the following: (1) the title of the document, (2) the date of the document, (3) the
name and title of the author of the document, (4) the name and title of each addressee and
recipient, (5) a description of the contents of the document, and (6) the privilege asserted by
Defendant. No documents or information created or generated pursuant to the requirements of the

27

Consent Decree shall be withheld on the grounds that they are privileged.

46. Defendant agrees that it will preserve, during the pendency of this Consent
Decree and for at least one (1) year after its termination, at least one legible copy of all documents
in its possession, custody or control that relate to the performance of Defendant's obligations
under this Consent Decree.

## XIII. NOTICES AND SUBMISSIONS

46. Whenever, under the terms of this Consent Decree, written notice is required to
be given or a plan, report or other submission is required to be sent by one Party to another, it
shall be directed to the individuals at the addresses specified below, unless those individuals or
their successors give notice of a change to the other Party in writing. All notices and submissions
shall be considered effective upon receipt, unless otherwise provided. Written notice as specified
herein shall constitute complete satisfaction of any written notice requirement of the Consent
Decree.

> As to the United States:
>
>> As to Department of Justice:
>>
>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice
>> P.O. Box 7611
>> Washington, D.C. 20044-7611
>> Re: DOJ # 90-5-2-1-06709
>>
>> As to the U.S. EPA:
>>
>> Regional Counsel
>> U.S. Environmental Protection Agency
>> Region 5
>> 77 W. Jackson Blvd. (C-14J)
>> Chicago, IL 60604

28

and

<u>For CAA Matters:</u>

Chief, Air Enforcement
and Compliance Assurance Branch
U.S. Environmental Protection Agency

Region 5
77 W. Jackson Blvd.(AE-17J)
Chicago, IL 60604

<u>For CWA Matters:</u>

Chief, Water Enforcement
and Compliance Assurance Branch
U.S. Environmental Protection
Agency
Region 5
77 W. Jackson Blvd. (WC-15J)
Chicago, IL 60604

<u>As to Ohio:</u>

Thomas J. Kalman, or his successor
Supervisor, Particulate Control Unit
Engineering Section
Division of Air Pollution Control
Ohio Environmental Protection Agency
122 S. Front Street
Columbus, Ohio 43215

Ed Fasko, or his successor
Northeast District Office
Ohio Environmental Protection
 Agency
2110 East Aurora Road
Twinsburg, Ohio 44087

<u>As to Defendant:</u>

Scott M. Dorn
Manager, Lorain Tubular Operations
United States Steel Corporation
2199 East 28th Street
Lorain, Ohio 44055

C. Daniel Baker
Senior General Attorney
Environmental and Real Estate
United States Steel Corporation
600 Grant Street
Pittsburgh, PA 15219-2749

Van Carson
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304

47.    <u>Defendant's Certification of Notices and Submissions</u>. All notices and

submissions required by this Consent Decree, which discuss, describe, demonstrate or support any findings, or make any representations concerning U.S. Steel's compliance or non-compliance with any requirement(s) of this Consent Decree, to be submitted by Defendant shall be certified by a responsible corporate official, and accompanied by the following certification:

> "I certify that, to the best of my knowledge and belief, the information contained in or accompanying this submission is true, accurate and complete. This certification is based on my personal preparation, review, or analysis of the submission, and/or inquiry of the directly responsible party for gathering the information who, acting on my direct instructions, made the verification that the submitted information is true, accurate and complete, to the best of their knowledge."

48.    U.S. EPA /Ohio EPA Review of Submissions.  Following receipt of any plan, report, or other submission by Defendant under this Consent Decree, U.S. EPA and Ohio EPA may (but need not) do one of the following, in writing:  (i) accept the submission; or (ii) reject the submission, notifying Defendant of deficiencies in the submission and granting Defendant an additional thirty (30) days within which to correct the deficiencies.  If Defendant fails to modify the submission consistent with the comments of U.S. EPA and Ohio EPA and resubmit it to U.S. EPA and Ohio EPA within thirty (30) days of receiving such comments, U.S. EPA and Ohio EPA may (a) approve the submission in whole or in part; (b) disapprove the submission in whole or in part; (c) approve the submission upon specified conditions, directing that Defendant modify its submission; or (d) any combination of the above.  Disputes between U.S. EPA, Ohio EPA and Defendant concerning U.S. EPA's review of submissions shall be resolved in accordance with Section XI (Dispute Resolution) of this Consent Decree.

## XIV.  **PUBLIC COMMENT**

49.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days, for public notice and comment in accordance with the provisions of 28 C.F.R.

§ 50.7. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. U.S. Steel consents to entry of this Consent Decree.

## XV. EFFECTIVE DATE AND RETENTION OF JURISDICTION

50. This Consent Decree shall take effect upon entry by the Court; provided, however, that Defendant shall be bound upon the lodging of this Consent Decree to comply with obligations of Defendant specified in this Consent Decree as accruing upon lodging.

51. The Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree, to resolve disputes arising hereunder in accordance with Section XI (Dispute Resolution), to modify the Consent Decree as provided in Section XVI (Consent Decree Modifications), and to provide such interpretation, construction or execution of the Consent Decree as may be necessary or appropriate for the foregoing purposes.

## XVI. CONSENT DECREE MODIFICATIONS

52. Any material modification of this Consent Decree shall be made by agreement of the Parties to this Consent Decree in writing, and shall not take effect unless approved by the Court. Any non-material modification of this Consent Decree shall be made by agreement of the Parties in writing, and shall not take effect until filed with the Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

53. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

54. Unanticipated or increased costs or expenses associated with the implementation of actions called for by this Consent Decree and economic hardship or changed financial

31

circumstances shall not serve as a basis for modifications of this Consent Decree.

## XVII. **TERMINATION**

55.     This Consent Decree shall terminate within thirty (30) days after all the following
have occurred:

        a.     Defendant has completed all actions required of Defendant under this
Consent Decree;

        b.     U.S. Steel has certified that it has completed all actions it is required to
complete under this Consent Decree to the Court, the United States and Ohio and maintained
continuous compliance with the terms of the Consent Decree for the preceding one (1) year except
for noncompliance that is determined by the United States and Ohio to be immaterial; and

        c.     The United States and Ohio, within ninety (90) days of receiving the
certification pursuant to Paragraph 55.b, above, have not contested that certification. If the United
States or Ohio contests U.S. Steel's certification, the Consent Decree shall remain in effect
pending resolution of the dispute in accordance with Section XI (Dispute Resolution) of this
Consent Decree.

## XVIII. **SIGNATORIES/SERVICE**

56.     The undersigned representative of Defendant, the Assistant Attorney General for
the Environment and Natural Resources Division of the Department of Justice and undersigned
representative of Ohio each certifies that he or she is fully authorized to enter into the terms and
conditions of this Consent Decree and to execute and legally bind such Party to this document.

57.     Defendant hereby agrees not to oppose entry of this Consent Decree by this Court
or to challenge any provision of this Consent Decree unless the United States has notified
Defendant in writing that it no longer supports entry of the Consent Decree.

58.     Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons.

## XIX. FINAL JUDGMENT

59.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, Ohio and Defendant. The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54.

SO ORDERED THIS 29th DAY OF NOVEMBER, 2005.

Christopher a Boyko

United States District Judge

33

FOR THE UNITED STATES OF AMERICA

KELLY A. JOHNSON
Acting Assistant Attorney General

Date:     9/14/05

W. BENJAMIN FISHEROW
Deputy Section Chief
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC   20044-7611

Date:     9/14/05

STEVEN J. WILLEY (0025361)
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources   Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC   20044-7611

GREGORY A. WHITE
United States Attorney
Northern District of Ohio

Date:     9/14/05

STEVEN J. PAFFILAS
Bar No. 0037376
Assistant United States Attorney
801 West Superior Avenue, Suite 400,
Cleveland 44113-1852
(216) 622-3600

Date:  6-29-05

BHARAT MATHUR
Acting Regional Administrator
U.S. Environmental Protection Agency,
Region 5
77 W. Jackson Boulevard
Chicago, IL  60604

Date:  6/21/05

CHRISTINE M. LISZEWSKI
Associate Regional Counsel
U.S. Environmental Protection Agency,
Region 5
77 W. Jackson Boulevard
Chicago, IL  60604

FOR THE STATE OF OHIO

JIM PETRO
ATTORNEY GENERAL OF OHIO

Date: 6/22/05

JOHN K. McMANUS
Assistant Attorney General
Office of the Attorney General
Environmental Enforcement Section
30 East Broad Street – 25th Floor
Columbus, Ohio 43215-3428
(614) 466-2766
(614) 644-1926 (FAX)

FOR DEFENDANT UNITED STATES
STEEL CORPORATION

Date:     6 - 10 -05

*Scott M. Dorn*

Signature

SCOTT M. DORN
Manager, Lorain Tubular Operations
United States Steel Corporation
2199 East 28th Street
Lorain, Ohio 44055
(440) 240-2700
(440) 240-2640 (FAX)

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name:  National Registered Agents, Inc.

Address:     145 Baker Street
             Marion, Ohio 43302